IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 13-30042-2 |
| | ) | |
| CHAD HANSMEIER, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION

**SUE E. MYERSCOUGH, U.S. District Judge.**

Defendant Chad Hansmeier filed a Motion to Suppress Evidence (d/e 20) and Supplemental Motion to Suppress Evidence (d/e 33). Hansmeier moves to suppress evidence seized from his residence on the morning of May 15, 2013 and statements he made subsequent to his arrest. Hansmeier also requests a full evidentiary hearing to determine whether the affidavit submitted in support of the search warrant was properly submitted.

The Motions are DENIED. The affidavit in support of the search warrant provided sufficient reliable information to support

issuance of the search warrant.  Even if the affidavit were deficient, the officers acted in good-faith reliance on the affidavit.  Hansmeier is not entitled to an evidentiary hearing because he has failed to make a substantial preliminary showing that the officer intentionally or recklessly made false statements or misleading omissions in the affidavit or that probable cause would not have existed without the false statements or omissions.

## I.  BACKGROUND

On the morning of May 15, 2013, Michael Murphy, a special agent with the Northeast Missouri Narcotics Task Force, executed an Affidavit for No-Knock Search Warrant ("Affidavit").  The Affidavit provides the following information.

West Central Illinois Drug Task Force Agent Nick Hiland contacted Agent Murphy at approximately 1:15 a.m. on May 15, 2013.  Agents Murphy and Hiland had worked together on several previous narcotics investigations.

Agent Hiland told Agent Murphy that the West Central Illinois Drug Task Force had a suspect (the "Confidential Source"[1]) in custody at the Quincy Police Department. The Confidential Source had been arrested while in the possession of approximately 68 grams of methamphetamine. Agent Hiland reported that the Task Force had previously made two controlled purchases of methamphetamine from the Confidential Source. Agent Murphy was familiar with the Confidential Source, who had previously lived in Lewis County, Missouri.

Agent Hiland told Agent Murphy that the Confidential Source was cooperating with law enforcement and wanted to share information about subjects living in Canton, Lewis County, Missouri, who were dealing in large quantities of methamphetamine, marijuana, and heroin. The male subject was identified as Defendant Chad Hansmeier.

Agent Murphy was familiar with Hansmeier from previous investigations. Agent Murphy had also received information from

[1] Defendant Hansmeier asserts that the Confidential Source is Defendant's co-defendant, Jason Walker. Supp. Mot., d/e 33, p. 2 ¶ 8.

another reliable source that Hansmeier was a multi-ounce methamphetamine dealer. Agent Murphy was aware that Hansmeier had been released from prison within the past year and was living at 1304 Wyaconda Avenue, Canton, Missouri, with his girlfriend, Kristina Ridgeway, who was the mother of one of Hansmeier's children.

After receiving the information from Agent Hiland, Agent Murphy contacted Special Agent Austin Snow of the Northeast Missouri Narcotics Task Force. Agent Snow had previously investigated Hansmeier and was familiar with him. Agents Murphy and Snow drove to the Quincy Police Department to speak to the Confidential Source.

The Confidential Source told Agents Murphy and Snow that for several months he had been receiving large quantities of methamphetamine from Hansmeier. Either the Confidential Source picked up the drugs from Hansmeier's residence or else Hansmeier or Ridgeway delivered the drugs to the Confidential Source in Quincy, Illinois. The Confidential Source agreed to point out Hansmeier's residence.

Agents Snow and Murphy transported the Confidential Source to Canton, Missouri.  When they arrived in Canton, the Confidential Source directed them to Hansmeier's residence at 1304 Wyaconda Avenue.  While driving there and back, the Confidential Source gave the Agents additional information about Hansmeier and Ridgeway.

The Confidential Source had been buying methamphetamine from Hansmeier for several months.  Recently, the Confidential Source had been buying quarter pounds (4 ounces) of methamphetamine at least once a week and usually twice a week.  Also recently, Hansmeier had been delivering a quarter-ounce of heroin each time he brought the Confidential Source a quarter-pound of methamphetamine.

Hansmeier charged the Confidential Source $2,000 per ounce for the methamphetamine.  The Confidential Source currently owed Hansmeier between $3,500 and $4,500 because Hansmeier would deliver the methamphetamine and heroin without requiring payment until later.

The Confidential Source told Agents Snow and Murphy that he had been to Hansmeier's residence about 18 times in the past six

months.  The Confidential Source reported that Hansmeier always kept methamphetamine, marijuana, and, the Confidential Source believed, heroin at his residence in Canton.  Approximately one month earlier, the Confidential Source was in Hansmeier's residence and saw 30 pounds of marijuana.  The Confidential Source saw shrink-wrapped drugs in a room in Defendant's house on more than one occasion.  Every time the Confidential Source went to Hansmeier's residence, Hansmeier had methamphetamine to deliver to him.  When the Confidential Source was at Hansmeier's home recently, he saw a large stack of money.  The Confidential Source stated that that was money Hansmeier had made selling large quantities of drugs.

Hansmeier told the Confidential Source that he had recently received a large supply of methamphetamine and was going on a 30-day vacation within the next couple of weeks.  Hansmeier told the Confidential Source that he (Hansmeier) would be able to bring the Confidential Source at least half a pound of methamphetamine prior to leaving on that vacation.

The Confidential Source last received a quarter-pound of methamphetamine and a quarter-ounce of heroin from Hansmeier a couple of days earlier. The Confidential Source believed Hansmeier had more than two pounds of methamphetamine at that time. Hansmeier told the Confidential Source that he (the Confidential Source) was the only person Hansmeier was delivering ounces of methamphetamine to in Quincy, Illinois but that Hansmeier had several people to whom he was dealing similar quantities in Hannibal, Missouri.

The Confidential Source stated that Hansmeier had two cameras set up at his residence. One of the cameras was inside the entry door of the house and the other faced outside the entry door of the house. The Confidential Source believed Hansmeier monitored the cameras so that he could see who was coming to his front door.

The Confidential Source told the officers there were three children between the ages of 2 and 11 years living in the home. The Confidential Source stated that both Hansmeier and Ridgway used drugs in front of the children, particularly marijuana.

The Affidavit also provides that during a previous investigation, another confidential informant ("CI 648") reported to Agent Snow that CI 648 had seen Hansmeier deliver "ice," or crystal methamphetamine, to Cary Singleton at his residence in Palmyra. CI 648 reported he was present when Hansmeier delivered a full gallon-size Ziploc bag of methamphetamine and six or seven bricks of marijuana. The methamphetamine was purportedly worth $7,000.

Agent Murphy believed Hansmeier was currently on parole from the Missouri Department of Corrections and that Craig Tallman was Hansmeier's parole officer. Hansmeier had at least one prior conviction for distribution of a controlled substance. Hansmeier's criminal history showed arrests for Unlawful Use of a Weapon in 1997, as well as numerous drug-related arrests and convictions. "Case net" showed Hansmeier was convicted of Resisting Arrest for a Felony on November 3, 2009 and sentenced to three years in the Missouri Department of Corrections but that the conviction did not show up on Hansmeier's criminal history.

Agent Murphy stated that, based on the information provided by the Confidential Source, Agent Murphy believed that Hansmeier and Ridgeway kept large quantities of methamphetamine, marijuana, and heroin at their residence. Based on the quantities Agent Murphy had been told about, he believed Hansmeier was a large dealer, not a street-level dealer, of narcotics. Based on his training and experience, Agent Murphy believed that large dealers in narcotics almost always keep a supply on hand for their customers. Based on the information from the Confidential Source, Agent Murphy believed the drugs were being kept at the residence located at 1304 Wyaconda Street.

The Affidavit also contains the following statement in support of the request for a no-knock warrant:

> During a previous search warrant at a residence where Hansmeier was an occupant, Hansmeier flushed drugs and drug paraphernalia after Law Enforcement Officers knocked and announced that they had a search warrant. Hansmeier has also resisted arrest by law enforcement in the past. According to Capt. Patti Talbert, since 1998 there have been three search warrants served on residences where Chad Hansmeier has resided. Due to the installation of cameras, Hansmeier's history of resisting arrest and attempting to destroy evidence, a no[-]knock search warrant is requested.

See Aff., d/e 20-1, pp. 5-6.

After Agent Murphy drafted the Affidavit, he took the Affidavit to Lewis County Prosecuting Attorney Jules DeCoster for his review. DeCoster, a commissioned Notary Public in Lewis County, notarized the Affidavit. DeCoster also prepared the warrant application.

The associate judge who typically reviews search warrant applications in Lewis County was unavailable on May 15, 2013. Therefore, the Lewis County Clerk's Office notified the Missouri Supreme Court. On May 15, 2013, Chief Justice Richard B. Teitelman entered an order temporarily transferring the Honorable Rick R. Roberts, associate Circuit Judge of the 1st Judicial Circuit (Clark County), to the 2nd Judicial Circuit (Lewis County) for the period of Wednesday, May 15, 2013.

At either 7:41, 8:00, or 8:10 a.m., depending on whether one looks at the facsimile time-stamp on the Search Warrant, the handwritten time on the Affidavit, or the handwritten time on the Request for No Knock Search Warrant ("Request"), the Circuit Clerk in Lewis County, Missouri, faxed the Request and Affidavit to Judge

Roberts on behalf of the Lewis County Prosecutor. (The Affidavit and Request contain a facsimile time stamp of 7:06 and 7:07 a.m. from the "NEMO TASK FORCE." <u>See</u> d/e 20-1; <u>see also</u> No Knock Search Warrant, d/e 20-2 (containing a facsimile time stamp from "NEMO TASK FORCE" of 7:07 a.m. and from the "LEWIS CO CIRCUIT CLK" of 7:41 a.m.). At 9:05 a.m., according to the date handwritten on the Warrant, Judge Roberts issued the No Knock Search Warrant.

The search warrant was executed the morning of May 15, 2013. According to the Government, the officers found marijuana, a loaded firearm, large amounts of currency, zipper bags containing numerous smaller sandwich bags, drug paraphernalia, and 200 grams of a white, powdery substance that appeared to be either a cutting agent or methamphetamine mixed with a cutting agent. Resp., d/e 24, p. 4. After being arrested and Mirandized, Hansmeier made statements to the police.

In September 2013, a federal grand jury charged Defendant Hansmeier by Superseding Indictment with conspiracy to distribute 500 grams or more of mixtures or substances containing

methamphetamine and mixtures or substances containing heroin.
See d/e 8.

## II. ANALYSIS

Hansmeier moves to suppress everything seized from his
residence the morning of May 15, 2013, as well as the statements
he made subsequent to his arrest.  In support thereof, Hansmeier
argues (1) Judge Roberts did not have the authority to issue the
warrant; (2) Judge Roberts did not comply with Federal Rule of
Criminal Procedure 4.1, which requires placing under oath the
applicant and person on whose testimony the application for a
search warrant is based if the application is made by electronic
means; (3) the Affidavit failed to set forth sufficient facts to establish
probable cause; and (4) the good-faith exception does not apply.

## A.  Judge Roberts Had the Authority to Issue the Warrant

Hansmeier first argues that Judge Roberts did not have
authority under Missouri law to issue the search warrant.  Mot.,
d/e 20, p. 2.

Under Missouri law, a search warrant may be issued by "any
judge of a court having original jurisdiction of criminal offenses

within the territorial jurisdiction where the person, place, or movable or immovable thing to be searched is located at the time of the making of the application." Mo. Rev. Stat. § 542.266(2). Hansmeier's residence is located in Lewis County, which is Circuit Two. Mo. Rev. Stat. § 478.077 (Lewis County is in Circuit Two). Judge Roberts is a judge in Clark County, which is Circuit One. See Mo. Rev. Stat. § 478.075 (Clark County is in Circuit One).

However, the Missouri Constitution provides the Missouri Supreme Court with the authority to "make temporary transfers of judicial personnel from one court or district to another as the administration of justice requires." Mo. Const., art. V, § 6; see also Mo. Sup. Ct. R. 11.01 (providing that the supreme court may make temporary transfers of judicial personnel from one court or district to another); Mo. Sup. Ct. R. 11.02 (a transferred judge has the same powers and responsibilities as a judge of the court to which he is transferred during the period designated); see also Buchanan v. Buchanan, 167 S.W.3d 698, 700 (Mo. 2005). As noted above, Chief Judge Teitleman of the Missouri Supreme Court entered an

order temporarily transferring Judge Roberts to Lewis County for the period of May 15, 2013.

Hansmeier argues that the order temporarily transferring Judge Roberts was not entered until after the Missouri Supreme Court office opened, presumably at 8:00 a.m. Hansmeier asserts that the "time of the making of the application" occurred at 7:06 a.m., the facsimile time stamp from the Task Force. Therefore, according to Hansmeier, Judge Roberts lacked the authority to issue the warrant.

Chief Justice Teitleman's order transferred Judge Roberts for the period of May 15, 2013—the entire day. Moreover, Agent Murphy's Affidavit was sworn at 8:00 a.m. and notarized at 8:10 a.m., and the warrant itself was issued at 9:05 a.m. Assuming the transfer order was entered at 8:00 a.m. after the courthouse opened, Judge Roberts had been temporarily transferred to Lewis County at the "time of making the application," which occurred at least after the Affidavit was notarized at 8:10 a.m. Therefore, Judge Roberts had the authority to issue the warrant.

## B.  Federal Rule of Criminal Procedure 4.1 Does Not Apply

Hansmeier next argues that no one testified or appeared before the judge who issued the warrant.  Mot., d/e 20, p. 5. Hansmeier cites to Federal Rule of Criminal Procedure 4.1, which permits a judge to consider information communicated by telephone or other reliable electronic means when deciding whether to issue a warrant or summons.  Fed. R. Crim. P. 4.1(a).  If, however, the judge decides to proceed under Rule 4.1, the judge must place under oath the applicant and any person on whose testimony the application is based.  Fed. R. Crim. P. 4.1(b)(1).  The court may also examine the applicant or the person on whose testimony the application is based.  Fed. R. Crim. P. 4.1(b)(1); see also Fed. R. Crim. P. 41(d)(3) ("In accordance with Rule 4.1, a magistrate judge may issue a warrant based on information communicated by telephone or other reliable electronic means").

The warrant in this case was issued by a state judge at the request of a state law enforcement officer arising out of a state investigation.  The officers proceeded under Missouri law, which allows an application for a search warrant to be submitted by

facsimile or other electronic means.  Mo. Rev. Stat. § 542.276(3) (also providing that "[o]ral testimony shall not be considered"). The Federal Rules of Criminal Procedure "do not govern the actions of state law enforcement officers when, at least at the time of the action in question, there was no federal involvement in the investigation."  United States v. Taylor, --- F. Supp. 2d ---, 2013 WL 5817246, at *3 (S.D. Ind. Oct. 29, 2013) (citing cases).  Hansmeier has presented no evidence of federal involvement in the investigation.  Therefore, Rule 4.1 does not apply.

To the extent Hansmeier asserts that Agent Murphy did not make the statements under oath, the Affidavit itself contradicts such an assertion.  The Affidavit contains the language "first being duly sworn" and is notarized.  See United States v. Brooks, 285 F.3d 1102, 1106 (8th Cir. 2002) (noting that "a person may be under oath even though that person has not formally taken an oath by raising a hand and reciting formulaic words" and finding that even if the officer was not under oath, "it is plain that his affidavit contained at the very least an affirmation of the truth of the statements in it, because it included a number of formal assertions

that he was telling the truth").  Therefore, Agent Murphy made the statements under oath.

## C. The Affidavit Provided Sufficiently Reliable Information to Support Issuance of the Search Warrant

Hansmeier argues that the Request and Affidavit in support of a search warrant failed to set forth sufficient facts which would lead a neutral and detached judge to reasonably conclude that there was probable cause to believe that evidence of drug offenses would be found at the residence.  Hansmeier asserts that the Affidavit only reveals that an untested and newly arrested informant claimed at some unspecified date that he had been in Hansmeier's  home and observed illegal drugs.

When a search is authorized by a warrant, the reviewing court defers to the issuing judge's finding of probable cause "if there is 'substantial evidence in the record' that supports that decision." United States v. Sims, 551 F.3d 640, 644 (7th Cir. 2008) (noting, however, that a judge may not rely on "conclusory allegations" or a "bare bones" affidavit).  Because the Affidavit was the only evidence presented to the judge in support of the search warrant, "the

validity of the warrant rests solely on the strength of the affidavit." United States v. Peck, 317 F.3d 754,755 (7th Cir. 2003). An affidavit establishes probable cause when, based on the totality of the circumstances, the affidavit sets forth sufficient evidence that would cause a reasonable person to believe that a search will uncover evidence of criminal activity. See United States v. Mykytiuk, 402 F.3d 773, 776 (7th Cir. 2005); United States v. Hicks, 650 F.3d 1058, 1065 (7th Cir. 2011).

When the affidavit is supported by information from an informant, the probable cause determination turns on the informant's credibility. United States v. Bell, 585 F.3d 1045, 1049 (7th Cir. 2009); United States v. Olson, 408 F.3d 366, 370 (7th Cir. 2005). To assess whether the informant's information is sufficiently reliable to support issuance of the warrant, a court considers: (1) the degree to which the informant acquired knowledge of the events through firsthand observation;(2) the amount of detail provided; (3) the extent to which the police corroborated the informant's statements; (4) the interval between the dates of the events and the application for the search warrant; and (5) whether the informant

appeared before the judge in person and filed his own affidavit.  See United States v. Sutton, 742 F.3d 770, 773 (7th Cir. 2014); United States v. Koerth, 312 F.3d 862, 866 (7th Cir. 2002).  No one factor is dispositive.  United States v. Brack, 188 F.3d 748, 756 (7th Cir. 1999) ("a deficiency in one factor may be compensated for by a strong showing in another or by some other indication of reliability").

In this case, several of the factors provide strong indicia of the credibility of the Confidential Source.  The Confidential Source acquired knowledge of the events through firsthand observation. The Confidential Source told Agent Murphy that he had been purchasing methamphetamine from Hansmeier for several months and recently began purchasing quarter-pounds of methamphetamine and quarter-ounces of heroin from Hansmeier on a weekly basis.  See United States v. Mitten, 592 F.3d 767, 774 (7th Cir. 2010) (noting that "the fact that each informant claimed to have purchased the crack himself describes the basis for his knowledge").

In addition, the Confidential Source provided specific details, including the amount of drugs he bought each time, the number of times a week he had recently purchased drugs from Hansmeier, and how much Hansmeier charged the Confidential Source. Sometimes the purchases took place at Hansmeier's home and other times Hansmeier or Ridgeway delivered the drugs to the Confidential Source. The Confidential Source also told Agent Murphy what he personally observed on some of the occasions the Confidential Source was in Hansmeier's home, including marijuana (observed a month before issuance of the search warrant) and a stack of money ("recently"). The Confidential Source also stated that every time he went to Hansmeier's house, Hansmeier had methamphetamine to sell to him.

Agent Murphy corroborated some of the information received from the Confidential Source. Agent Murphy knew where Hansmeier lived. Agent Murphy drove the Confidential Source to Canton, Missouri, and then had the Confidential Source direct Agent Murphy to Hansmeier's house, which the Confidential Source did successfully. Agent Murphy checked Hansmeier's criminal

history, which showed at least one prior conviction for distribution of a controlled substance.  Agent Murphy also noted that Hansmeier was currently on parole.  See Olson, 408 F.3d at 372 (a criminal history check of the accused has some corroborative value); but see Peck, 317 F.3d at 757 (a record search of the accused is insufficient alone to corroborate a confidential informant's statement).

The information from the Confidential Source was also somewhat corroborated by information Agent Snow received from CI 648.  However, the Court does not give that corroboration any weight because Agent Murphy did not provide any details about this informant or the age of the information received.  See, e.g., Bell, 585 F.3d at 1051 (statements in the affidavit that other unnamed persons implicated the defendant were insufficient where the affidavit provided no additional details regarding the other informants, how they obtained the information, their relationship to the defendant, or the date of the reports).  Similarly, the Court gives no weight to Agent Murphy's statement that he received information from "a reliable source that Hansmeier was a multi-ounce

methamphetamine dealer," (Aff., d/e 20-1, p. 3), because such statement is wholly conclusory.  See United States v. Lowe, 389 F. App'x 561, 562-63 (7th Cir. 2010) (unpublished) ("wholly conclusory assertions of reliability are not entitled to any weight").

The interval between the date of the events the Confidential Source described and the application for the search warrant also supports the Confidential Source's reliability.  The age of the information is only one factor used to determine whether probable cause exists.  United States v. Spry, 190 F.3d 829, 836 (7th Cir. 1999).  Where the affidavit refers to facts that show ongoing, continuous criminal activity, the passage of time is less critical.  Id.

The information from the Confidential Source spanned a six-month period, but the Confidential Source described continuous criminal activity.  Specifically, the Confidential Source told Agent Murphy that he had been purchasing methamphetamine from Hansmeier for several months and had recently purchased methamphetamine and heroin from Hansmeier once or twice a week.  The Confidential Source last received methamphetamine and heroin from Hansmeier a couple of days earlier, and Hansmeier still

had two pounds of methamphetamine at that time. In addition, while some of his observations were a month old (e.g., the observation of 30 pounds of marijuana in Hansmeier's home), the Confidential Source also told Agent Murphy that when he was at the house "recently" he saw a large stack of money. The interval between the events described by the Confidential Source and the application for the search warrant was not so long as to dispel a reasonable belief that a search of the house would uncover evidence of illegal drug activity.

A few of the factors used to assess whether the informant's information is sufficiently reliable to support issuance of a warrant weigh against the credibility of the Confidential Source. The Affidavit contains no indication that the Confidential Source had provided reliable information in the past. But see Koerth, 312 F.3d at 867-68 (noting that "[s]tatements from an informant of unknown reliability may in certain instances serve to establish probable cause if, under the totality of the circumstances, a reasonable person might consider that the statements are worthy of credence") (citing Illinois v. Gates, 462 U.S. 213, 238 (1983)). Also, the

Confidential Source did not prepare his own affidavit or appear before Judge Roberts.

Another factor weighing against the Confidential Source's credibility is that he was newly arrested. The fact that an informant was newly arrested merits "a greater dose of skepticism when assessing his credibility." Olson, 408 F.3d at 370 (citing cases for the proposition that a newly arrested informant has an incentive to try to mitigate his own culpability).

Even so, when an informant makes a statement against penal interests, that fact carries a presumption of reliability. Id. at 371. The Confidential Source's statements here were against his penal interest. The Confidential Source told Agent Murphy that he had been purchasing methamphetamine from Hansmeier for several months and had recently been purchasing quarter-pounds of methamphetamine and quarter-ounces of heroin from Hansmeier once or twice a week. Mitten, 592 F.3d at 774 ("Statements against penal interest have also been viewed as carrying some indicia of reliability"—the fact that the informant is motivated by a desire to lessen the consequences of his own crime does not make the

information inherently unreliable).  This information increased the level of the Confidential Source's culpability and exposed him to a higher sentencing range because of the quantity of drugs he described purchasing.  These statements against penal interest do carry some indicia of reliability.

Viewing the totality of the circumstances, the Court finds that the issuing judge had a substantial basis for determining that probable cause existed.  The factors support finding the Confidential Source reliable.  The Confidential Source described a course of criminal conduct and provided facts supporting a nexus between the illegal drugs and Hansmeier's residence.  The Confidential Source purchased illegal drugs from Hansmeier for a period of months, and some of the deliveries occurred at Hansmeier's residence.  While in the residence, the Confidential Source observed evidence of drug trafficking, including the stack of money and marijuana.  The Confidential Source also indicated that Hansmeier had methamphetamine to sell to him every time the Confidential Source went to Hansmeier's house.  Therefore, the

information in the affidavit was sufficient to establish probable cause.

## D. Even Lacking Probable Cause, the Good-Faith Exception Applies

Even lacking probable cause, the good-faith exception applies. The Fourth Amendment exclusionary rule does not apply to bar evidence seized in good-faith reliance on a search warrant that is later found defective. United States v. Leon, 468 U.S. 897, 905 (1984).

An officer's decision to obtain a warrant is prima facie evidence of good faith. Peck, 317 F. 3d at 757. To rebut the prima facie evidence of good faith, a defendant must show that: (1) the judge issuing the warrant abandoned his judicial role and merely served as a rubber stamp for the police; (2) the affidavit submitted was so lacking in probable cause that no officer could have an objectively reasonable belief in the existence of probable cause; or (3) the officers seeking the warrant were dishonest or reckless in preparing the affidavit in support of the warrant. United States v.

<u>Dumes</u>, 313 F.3d 372 (7th Cir. 2002) (citing <u>Leon</u>, 468 U.S. at 914-15).

Hansmeier argues that each of these grounds defeats the good-faith exception. Hansmeier also argues that Agent Murphy's Affidavit, clarified by the disclosure of withheld materials and in light of the exaggerations and inaccuracies, no longer demonstrates probable cause and that a <u>Franks</u> hearing is mandated. <u>See</u> <u>Franks v. Delaware</u>, 438 U.S. 154, 155-56 (1978) (holding that "where a defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request").

### 1. *Judge Roberts Did Not "Rubber-Stamp" the Request*

Hansmeier first argues that the process used to obtain the warrant—transmitting the Affidavit electronically without any testimony—in conjunction with the "bare bones" Affidavit, amounts to the judge's rubber-stamp of the application. Original Motion, p.

7.  An officer may not rely on a search warrant if he knows or has reason to know that the judge did not "meaningfully and critically evaluate the evidence presented at the probable cause hearing." Koerth, 312 F.3d at 868.

However, both Missouri and federal law allow for the electronic transmittal of warrant applications.  See Fed. R. Crim. P. 4.1; Fed. R. Crim. P. 41(d)(3); Mo. Rev. Stat. § 542.276(3) (allowing submission of the application by electronic means and barring the consideration of oral testimony).  Therefore, submitting the Request and Affidavit by facsimile was not improper.  Hansmeier has not shown that Judge Roberts failed to meaningfully and critically evaluate the evidence before issuing the warrant.

### 2.  The Affidavit Was Not So Lacking In Probable Cause that No Reasonable Officer Could Have an Objectively Reasonable Belief in the Existence of Probable Cause

Hansmeier next argues that the Affidavit was so lacking in probable cause that no officer could have an objectively reasonable belief in the existence of probable cause.

To determine whether an officer could have objectively relied in good faith on the judge's decision to issue the warrant, the court

considers whether the officer could have reasonably believed that the material presented to the judge was sufficient to establish probable cause.  <u>Koerth</u>, 312 F.3d at 869.  Generally, the court will admit the evidence unless: (1) a court has previously found a materially similar affidavit insufficient to establish probable cause under indistinguishable facts; or (2) the affidavit is so plainly deficient that a reasonably trained officer would have known that the affidavit failed to establish probable cause and that he should not have applied for the warrant.  <u>Koerth</u>, 312 F.3d at 869 (quotations and citations omitted).

In this case, Hansmeier has not cited to a case holding that an affidavit materially similar to Agent Murphy's failed to establish probable cause.  <u>See</u>, <u>e.g.</u>, <u>United States v. Searcy</u>, 664 F.3d 1119, 1125 (7th Cir. 2011) (noting that the defendant failed to cite any cases holding that a materially similar affidavit failed to meet the test of establishing probable cause).  The cases cited by Hansmeier are not materially similar.

For example, in <u>Owens v. United States</u>, 387 F.3d 607, 608 (7th Cir. 2004), the affidavit only stated "that three months earlier

an informant had bought 'a quantity of crack' from [the defendant]
at a house believed to be [the defendant's residence.]"  The affidavit
did not identify the actual quantity of the crack or the reliability of
the informant.  <u>Id.</u>  Therefore, the court found the affidavit was
insufficient to establish probable cause to believe that the search of
the premises would turn up contraband or evidence of a crime.  <u>Id.</u>

In contrast, the Affidavit here described numerous sales over a
period of months, the most recent being two to three days before
the request for the warrant.  The Confidential Source also provided
details, including the amount of drugs sold to him and what he
observed in the residence.   The other cases cited by Hansmeier are
similarly distinguishable.  <u>See</u> <u>United States v. Hython</u>, 443 F.3d
480, 486 (6th Cir. 2006) (government conceded that the affidavit
that described one controlled buy at an unknown time from a
residence did not support probable cause to believe that the
residence was the "operational base for an ongoing drug enterprise"
and the court found the good faith exception did not apply); <u>United</u>
<u>States v. Zimmerman</u>, 277 F.3d 426, 432-35 (3rd Cir. 2002) (finding
no probable cause to search the defendant's home for adult or child

pornography where the affidavit contained no information that the defendant ever purchased or possessed child pornography, and information in the affidavit that the defendant had one video clip of adult pornography 10 months earlier was insufficient to support probable cause).

The Court also finds that, even if the Affidavit did not establish probable cause, the Affidavit is not so plainly deficient that a reasonably trained officer would have known that the affidavit failed to establish probable cause and that he should not have applied for the warrant.  The information provided by the Confidential Source included statements that Hansmeier, at the very least, sold methamphetamine and kept methamphetamine at his home.  The Confidential Source provided specific details, including the price charged for the methamphetamine and the amount purchased.  In addition, the Confidential Source—who was arrested with 68 grams of methamphetamine and from whom the Task Force had previously made two controlled purchases of methamphetamine— made the statements against his penal interest.  Agent Murphy attempted to corroborate the Confidential Source's information by

confirming that the Confidential Source did, in fact, know where Hansmeier lived and by viewing Hansmeier's criminal history. All of these facts indicate that Agent Murphy did not act unreasonably in relying on the Confidential Source's information.

### 3. *Hansmeier Has Not Made a Substantial Preliminary Showing that Agent Murphy Deliberately or Recklessly Made Materially False Statements or Omissions*

Finally, Hansmeier argues that Agent Murphy deliberately or recklessly omitted material information from the Affidavit or made misleading statements. Hansmeier contends that he is entitled to an evidentiary hearing. In support thereof, Hansmeier submitted the testimony of Agent Murphy and Captain Talbert from the motion to suppress hearing held in state court. See Transcript, d/e 20-4.

Under Franks v. Delaware, 438 U.S. 154 (1978), a search warrant is not valid if the officer obtains it by deliberately or recklessly presenting false, material information to the judge issuing the warrant. The rationale of Franks also applies to material omissions. See United States v. Williams, 737 F.2d 594, 604 (7th Cir. 1984); United States v. McMurtrey, 704 F.3d 502, 508

(7th Cir. 2013) (noting that a defendant must also show the omission was "designed to mislead or was made in reckless disregard of whether it would mislead").  An evidentiary hearing on the veracity of the affidavit is required when the defendant requests a hearing and makes a substantial preliminary showing that a false statement or misleading omission was made deliberately or with reckless disregard for the truth and that probable cause would not have existed without the false statements or misleading omissions. McMurtrey, 704 F.3d at 508-09 (noting that "[i]t is relatively difficult for a defendant to make the 'substantial preliminary showing' required under Franks"); United States v. Prideaux-Wentz, 543 F.3d 954, 962 (7th Cir. 2008).

To make a substantial preliminary showing, the defendant must point to specific intentional or reckless misrepresentations or omissions.  See McMurtrey, 704 F. 3d at 509.  The defendant must support the claim with the sworn statements of witnesses.  Id.; see also Franks, 438 U.S. at 171 (noting that the defendant must point out the portion of the affidavit claimed to be false and provide sworn statements of witnesses or explain the absence of such sworn

statements).  It is not sufficient for a defendant to allege negligent or innocent mistakes or to make conclusory allegations.  <u>McMurtrey</u>, 705 F. 3d at 509.

Hansmeier first argues that Agent Murphy omitted from his Affidavit any mention of the Confidential Source's extensive criminal record, which includes drug convictions and convictions for burglary and theft.  Mot. p. 6, ¶ 16; Supp. Mot. p. 2 paragraph 8. Hansmeier also asserts that Agent Murphy did not disclose that the Confidential Source was looking to help himself with his own charges.  Mot. p. 6 ¶ 16.

Even if Agent Murphy knew the Confidential Source's criminal history and intentionally failed to include the history in the Affidavit,[2] the information was not material.  The Affidavit indicated that the Confidential Source had been arrested with 68 grams of methamphetamine and that the Task Force had made two controlled buys from the Confidential Source.  The Affidavit also

[2] Agent Murphy testified at the state court hearing that he "did not know his exact criminal history" but knew the Confidential Source was on parole for a narcotics violation.  Tr., d/e 20-4, p. 28.

contained the Confidential Source's admission that he had been buying methamphetamine from Hansmeier for several months and more recently had also been buying heroin. This information was sufficient for Judge Roberts to weigh the Confidential Source's credibility. See United States v. Hanhardt, 157 F. Supp. 2d 978, 994-95 (N.D. Ill. 2001) (finding that the officer included enough of the criminal histories of the informants to permit the court to weigh their reliability); see also, e.g., United States v. LaMorie, 100 F.3d 547, 555 (8th Cir. 1996) (finding the omission that the informant was a convicted felon was not material where the officer disclosed that the informant confessed to participating in a burglary, arson, and a scheme to validate and cash stolen money orders and noting "[t]he judge could hardly have been under the impression that [the informant] was a model citizen"). Even if the Confidential Source's full criminal history had been included in the Affidavit, the Affidavit would still have been supported by probable cause.

Similarly, Agent Murphy's failure to disclose that the Confidential Source was looking to help himself with his own charges—even if deliberately and recklessly omitted with the intent

to mislead the judge—is not material. The Affidavit indicated that the Confidential Source was recently arrested and was cooperating with law enforcement. This would have put the judge on notice that the Confidential Source was likely looking to help his own case. See Molina v. Cooper, 325 F.3d 963, 970 (7th Cir. 2003) ("[C]ourts are aware that informants are frequently facing charges and hoping for deals"); United States v. Thompson, 139 F. App'x 724, 732 (7th Cir. 2005) (unpublished) ("[T]he fact that [the informant] was facing charges and hoping for a deal would not surprise the judge or be likely to upset his probable cause finding since informants are often facing charges and hoping for deals") (internal quotation marks and citation omitted); Peck, 317 F.3d at 758 (noting that most confidential informants have something to gain by giving their statements and finding that the officer's use of the informant's statement was not unreasonable even when the officer knew she was biased).

Hansmeier also argues that Agent Murphy did not disclose that heroin was found with the informant. Mot. p. 6, ¶ 16. Hansmeier does not explain why the omission of this information

was material.  The inclusion of this information would not have affected the determination that the Affidavit was supported by probable cause.

Hansmeier further argues that Agent Murphy failed to disclose that the information in the Affidavit regarding CI 648 had occurred two to three years earlier.  Mot, p. 7, ¶ 17; Supp. Mot. p. 3, ¶ 10; but see State Ct. Tr., d/e 20-4, p. 37 (Murphy testified that the information received from CI 648 was "[a] little over a year" old).  Specifically, Hansmeier notes that Agent Murphy referred to information received from Special Agent Snow about a previous investigation and information received from CI 648.  However, Hansmeier criticizes Agent Murphy's failure to reveal that the information "may have been given to Snow 2-3 years prior to May 15, 2013 and never resulted in a prosecution against Hansmeier."  Supp. Mot. p. 3, ¶ 10.

As noted above, this Court gave no weight to the information received from CI 648 when determining whether the decision to issue the warrant was supported by substantial evidence.  Agent Murphy provided no details about CI 648 or when the information

was received. However, even without considering the information received from CI 648, this Court found sufficient evidence supported the probable cause determination. Therefore, the information Hansmeier claims was omitted was not material.

Additionally, Hansmeier claims that Agent Murphy makes reference in his Affidavit to Hansmeier flushing drugs and drug paraphernalia down a toilet when law enforcement served a search warrant on his residence but words the assertion as if Agent Murphy had been present. Mot. p. 7, ¶ 18; Supp. Mot. p. 3, ¶ 11. However, Agent Murphy testified at the suppression hearing that the information came from Captain Talbert. <u>See</u> Tr., d/e 20-4, p. 38. Captain Talbert testified that she gave the information to Agent Murphy but could not recall when the incident occurred. <u>See</u> Tr., d/e 20-4, p. 53.

The Court does not interpret the statement in the Affidavit as an assertion that Agent Murphy personally observed the incident when Hansmeier purportedly tried dispose of drugs and drug paraphernalia down the toilet. In any event, the information provided was not false because another law enforcement officer is a

reliable source.  See United States v. Johnson, No. 11 CR 290, 2011 WL 4396919, at *5 (N.D. Ill. Sept. 20, 2011) ("It is well-settled that another law enforcement officer is a reliable source and that an affiant need not make a special showing of reliability regarding information that he obtained from other officers").

Finally, Hansmeier argues that the Confidential Source's statement that he had been to Hansmeier's house to buy methamphetamine 18 times in the past six months must be questioned because Hansmeier had only been out of prison for three months.  Supp. Mot. p. 2, ¶ 8.

However, it is not enough to show that the informant lied and that the officer included the lie in the affidavit.  United States v. Johnson, 580 F.3d 666, 670 (7th Cir. 2009).  The officer must have perjured himself or acted recklessly, meaning that he "seriously doubted or had obvious reason to doubt the truth of the allegations."  Id.  Hansmeier has not made any showing that Agent Murphy knew or should have known the statement was false.

Moreover, the statement is not material.  Whether the Confidential Source had been buying drugs from Hansmeier for

three months or six months prior to the application for the search warrant, the information shows a continuous course of dealing drugs and provided a basis for the Confidential Source's statement that he observed a stack of money in Hansmeier's home "recently" and 30 pounds of marijuana a month earlier.

Hansmeier has not made a substantial preliminary showing that Agent Murphy intentionally or recklessly included materially false statements or made material omissions.  Therefore, the request for an evidentiary hearing is denied.

### III. CONCLUSION

For the reasons stated, Defendant Hansmeier's Motion to Suppress Evidence [20] and Supplemental Motion to Suppress Evidence [33] are DENIED.  Defendant Hansmeier's request for an evidentiary hearing under Franks v. Delaware, 438 U.S. 154 (1978) is also DENIED.

ENTER: May 8, 2014

FOR THE COURT:

s/Sue E Myerscough
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE