## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 13-30042-2** |
| | ) | |
| **CHAD HANSMEIER,** | ) | |
| | ) | |
| **Defendant.** | ) | |

### OPINION

**SUE E. MYERSCOUGH, U.S. District Judge.**

This matter is before the Court on Defendant Chad Hansmeier's Amended Supplemental Motion to Suppress Evidence (d/e 54). The Motion raises a number of claims already raised by Hansmeier in his two previous motions to suppress, which the Court denied in its May 8, 2014 Opinion (d/e 38).

On November 7 and November 12, 2014, this Court held a hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978). Following the hearing, the Court took the matter under advisement. After a careful review of the motion, the Government's response, the

Court's May 8, 2014 Opinion, and the evidence presented at the hearing, the Amended Supplemental Motion to Suppress Evidence is DENIED.

## I.  BACKGROUND

The facts are set forth in this Court's May 8, 2014 Opinion.  To summarize, on the morning of May 15, 2013, Michael Murphy, a special agent with the Northeast Missouri Narcotics Task Force, executed an Affidavit for a No-Knock Search Warrant.  The information in the Affidavit was primarily supported by information received from a confidential source.  The Confidential Source had just been arrested while in the possession of approximately 68 grams of methamphetamine.  <u>See</u> Opinion, d/e 38, for a full recitation of the contents of the Affidavit.

After Murphy drafted the Affidavit, he took it to Lewis County, Missouri, prosecuting attorney Jules DeCoster.  DeCoster notarized the Affidavit and prepared the warrant application.  The documents were faxed to Judge Rick R. Roberts, who issued the No-Knock Search Warrant.

The search warrant was executed on May 15, 2013 by Agent Murphy and other officers. The Government asserts that officers found marijuana, a loaded firearm, large amounts of currency, zipper bags containing numerous smaller sandwich bags, drug paraphernalia, and 200 grams of a white, powdery substance that appeared to be either a cutting agent or methamphetamine mixed with a cutting agent. After being arrested and given his <u>Miranda</u> warnings, Hansmeier made statements to the police.

Hansmeier was originally charged in Missouri state court with two counts of possession of a controlled substance and unlawful possession of a firearm. On April 30, 2014, the prosecuting attorney, DeCoster, requested dismissal of the case.

Seven months earlier, in September 2013, Defendant Chad Hansmeier was charged in federal court with conspiracy to distribute 500 grams or more of mixtures or substances containing a detectable amount of methamphetamine and heroin in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A), and (b)(1)(C). <u>See</u> Superseding Indictment (d/e 8). On May 8, 2014, a Second Superseding Indictment amending the dates of the charged conspiracy was filed.

<u>See</u> Second Superseding Indictment (d/e 39) (alleging a conspiracy occurring no later than March 1, 2013 and continuing no later than August 27, 2013).

## A.    Hansmeier Files and the Court Denies the First Two Motions to Suppress

In January 2014, Hansmeier filed a Motion to Suppress, which he supplemented in March 2014.  <u>See</u> d/e 20, 33.  Hansmeier argued: (1) Judge Roberts did not have the authority to issue the warrant; (2) Judge Roberts did not comply with Federal Rule of Criminal Procedure 4.1; (3) the Affidavit failed to set forth sufficient facts to establish probable cause; and (4) the good-faith exception did not apply, in part because Agent Murphy deliberately or recklessly made materially false statements or omissions in the Affidavit.

In May 2014, this Court denied the First Motion to Suppress. <u>See</u> Opinion, d/e 38.  In sum, the Court found Judge Roberts had the authority to issue the warrant and was not required to comply with Federal Rule of Criminal Procedure 4.1.  The Court further found that the Affidavit in support of the search warrant contained

sufficiently reliable information to support issuance of the search warrant. The Court noted that because the Affidavit was supported by information from a Confidential Source, the probable cause determination turned on the Confidential Source's credibility. While some of the factors weighed against finding the Confidential Source credible (including the fact that there was no indication that he had provided reliable information in the past, he did not prepare an affidavit or appear before the judge, and the Confidential Source was recently arrested), the Court found that the totality of the circumstances supported the Confidential Source's credibility. The relevant factors included that the Confidential Source's information was based on first-hand observation, he gave specific details, the agent was able to corroborate some of the information (Hansmeier's criminal history and where Hansmeier lived), the Confidential Source described ongoing criminal activity, some of which had occurred within a few days, and the Confidential Source made statements against his own interest.

The Court also found that, even if probable cause were lacking, the good-faith exception applied. In particular, the Court

found no evidence that the issuing judge abandoned his judicial role and served as a rubber stamp for the police or that the affidavit was so lacking in probable cause that no officer could have an objectively reasonable belief in the existence of probable cause.

Moreover, the Court found that Hansmeier did not make a substantial preliminary showing that Agent Murphy deliberately or recklessly made materially false statements or omissions. The Court found that the information Hansmeier claimed was either false or recklessly omitted—including the Confidential Source's criminal history, that the Confidential Source was looking to help himself with his own charges, and that the Confidential Source was found with heroin—were not material. The Court also found that the references to Hansmeier purportedly trying to dispose of drugs and drug paraphernalia down the toilet were not false because that information came from another police officer. Finally, the Court found that it was not enough to show that the informant lied about how long he had been buying methamphetamine from Hansmeier (the Confidential Source said he had purchased methamphetamine 18 times in the past six months but Hansmeier had only been out

of prison for three months) because Hansmeier did not make any showing that Agent Murphy knew or should have known the statement was false. The Court also found that the statement was not material.

## B. Hansmeier Files the Amended Motion to Suppress Evidence

In July 2014, Hansmeier filed his Amended Motion to Suppress Evidence (d/e 54). The new Motion raises some of the same arguments raised in the original motion but also raises some new arguments. Hansmeier argues that (1) the prosecuting attorney, Jules DeCoster, had a conflict of interest at the time the warrant was submitted to the state court judge because DeCoster represented Hansmeier in a civil matter; (2) the Affidavit failed to set forth sufficient facts to establish probable cause because (a) the information was stale, (b) Agent Murphy performed no corroboration, (c) no one appeared before Judge Roberts, (d) the Affidavit did not contain information that the Confidential Source had provided reliable information in the past, and (e) Agent Murphy included information received from Confidential Informant 648 (CI

648) without any indication that CI 648 was reliable; (3) the Court

should reconsider its decision in light of <u>United States v. Glover</u>,

755 F.3d 811 (7th Cir. 2014); and (4) Agent Murphy deliberately or

recklessly included false material information or omitted material

information from the Affidavit by (a) omitting information about

Agent Murphy's disciplinary record; (b) omitting information that

the Confidential Source was an addict and by his own admission

had injected himself with methamphetamine on May 14, 2013; (c)

including false information about an incident where Hansmeier

allegedly flushed drugs down a toilet when law enforcement served

a search warrant on Defendant's residence when Defendant lived in

Monroe County, Missouri; and (d) including information that the

Confidential Source told him that Hansmeier had two cameras, one

inside and one outside the front door, but that only one non-

functioning camera was found inside the front door.

## II. ANALYSIS

As an initial matter, the Court notes that Agent Murphy is a

Missouri officer and the warrant was executed in Missouri.  The

parties barely address whether Seventh Circuit or Eighth Circuit

law applies, although the Government notes the issue without much elaboration. The Court, therefore, will apply Seventh Circuit law. Neither party points to an Eighth Circuit case to show either that Agent Murphy relied on Eighth Circuit precedent or lacked good faith because an Eighth Circuit case put him on notice that the Affidavit was insufficient. See, e.g., Davis v. United States, 131 S. Ct. 2419 (2011) (holding that "evidence obtained during a search conducted in reasonable reliance on binding precedent is not subject to the exclusionary rule"); United States v. Koerth, 312 F.3d 862, 870 (7th Cir. 2002) (finding the officers acted in good faith and noting that the defendant failed to cite to any cases holding that a materially similar affidavit failed to establish probable cause).

**A.    Hansmeier Has Not Shown that the Alleged Conflict of Interest Warrants Suppression of the Evidence**

Hansmeier argues that the evidence must be suppressed because Attorney DeCoster still represented Hansmeier in another case when, on May 15, 2013, DeCoster notarized the Affidavit and prepared the warrant application. Hansmeier asserts that DeCoster, in an effort to "cover his tracks," drafted a letter

essentially terminating the representation and back-dated the letter to May 13, 2013.

Specifically, DeCoster, in addition to serving as Lewis County prosecuting attorney, had a private law practice in Monticello, Missouri. On July 17, 2012, DeCoster filed an Entry of Appearance and Motion to Set Aside Judgment and Decree of Modification on behalf of Hansmeier in Marion County, Missouri, Case number 12-MR-CF00539. DeCoster billed Hansmeier for DeCoster's services.

On April 12, 2013, Hansmeier paid $600, leaving $954 still due and owing. On May 16, 2013, while Hansmeier was in the Lewis County, Missouri, Jail, Hansmeier received via hand delivery a letter from Attorney DeCoster, bearing the date of May 13, 2013. The letter advised Hansmeier and Kristina Ridgeway (Hansmeier's girlfriend) as follows:

> Please be advised that I have decided to accept the cash payment which you made to my office as full settlement of your account. There is no remaining balance due at this time and as I was no longer representing you, I had closed my file.

Defendant's Exhibit 10.

Hansmeier testified at the hearing that DeCoster had told him that they would return to court once Hansmeier had paid him. Hansmeier also testified that he was consulting with DeCoster about some concerns Hansmeier had about "some false statements and false accusations" relating to a previous arrest on parole violations.

Hansmeier does not provide any citation or argument explaining why suppression is required. The Government interprets Hansmeier's statements as an argument that DeCoster violated the rules of professional conduct and, as such, the evidence should be suppressed. The Government argues that there was no conflict of interest and, even if a conflict existed, the entire issue has no bearing on the issues before the Court because DeCoster was not the affiant or the judge weighing probable cause. The Government further argues that even if DeCoster had a conflict that violated the rules of professional conduct, that is not an adequate basis for the court to suppress evidence that is otherwise admissible.

Even if the Court were to assume that DeCoster committed an ethical violation, suppression is not required. In <u>United States v.</u>

<u>Olson</u>, 450 F.3d 655 (7th Cir. 2006), the defendant argued that his statements should be suppressed because the prosecutor obtained the statements in violation of Wisconsin Supreme Court Rule 3.8(b). Wisconsin Supreme Court Rule 3.8(b) required that prosecutors undertake "reasonable efforts to assure that the accused has been advised of the right to, and the procedure for obtaining, counsel and has been given reasonable opportunity to obtain counsel." Wis. Sup. Ct. R. 20:3.8(b). The Seventh Circuit expressed doubt that the prosecutors violated any ethical rules. <u>Id.</u> at 682. The Seventh Circuit further noted that, even if an ethical violation occurred, suppression was not required because the record did not indicate a willful or egregious act, the conduct did not result in a constitutional violation, and there was no clear authority that they were under an obligation to do more than they did. <u>Id.</u>

Similarly, in <u>United States v. Williams</u>, 698 F.3d 374, 380 (7th Cir. 2012), the defendant attempted to have his attorney give a letter to the defendant's cousin in which the defendant asked the cousin to provide a false alibi. The attorney withdrew as defendant's counsel, turned the letter over to the government, and

agreed at the government's request to testify at the defendant's trial. Id. The Seventh Circuit found the attorney did not violate the lawyer-client privilege and did not act unethically. The Court further noted that, even if the attorney had acted unethically, it did not follow that the testimony was inadmissible:

> Exclusionary rules, which protect the guilty, are no longer favored. "Suppression of evidence ... has always been our last resort, not our first impulse. The exclusionary rule generates substantial social costs which sometimes include setting the guilty free and the dangerous at large." Hudson v. Michigan, 547 U.S. 586, 591, 126 S .Ct. 2159, 165 L. Ed. 2d 56 (2006); see also Sanchez–Llamas v. Oregon, 548 U.S. 331, 343–50, 126 S. Ct. 2669, 165 L. Ed. 2d 557 (2006); Trammel v. United States, 445 U.S. 40, 50–51, 100 S. Ct. 906, 63 L. Ed. 2d 186 (1980). "Only communications subject to the attorney-client privilege cannot be disclosed under judicial compulsion," Newman v. State, 384 Md. 285, 863 A.2d 321, 332 (2004)—and the privilege doesn't extend to a client's asking his lawyer to help him commit a crime. See also United States v. Zolin, 491 U.S. 554, 563, 109 S. Ct. 2619, 105 L. Ed. 2d 469 (1989); In re Grand Jury, 475 F.3d 1299, 1305–06 (D.C.Cir.2007).

Id. at 382.

In this case, even assuming a conflict of interest existed (a matter the Court does not decide), suppression would not be the appropriate remedy. Agent Murphy testified DeCoster did not make

any corrections to his Affidavit, had no input on the Affidavit, and provided no information to him regarding Hansmeier. DeCoster merely notarized the Affidavit. The Court finds Agent Murphy credible. The alleged conflict did not make it more or less likely that the issuing judge would find probable cause and no evidence was obtained because of Attorney DeCoster's involvement or the alleged conflict. See, e.g., United States v. Ward, 895 F. Supp. 1000, 1008 (N.D. Ill. 1995) (wherein the attorney had contact with individual who was represented by counsel outside of counsel's knowledge in violation of the ethical rules; the court found that while suppression was a possible remedy, suppression was not appropriate in this case).

## B.     The Affidavit Sets Forth Sufficient Facts to Establish Probable Cause

In the Amended Supplemental Motion to Suppress Evidence, Hansmeier again challenges whether the Affidavit set forth sufficient facts to establish probable cause.

An affidavit establishes probable cause when, based on the totality of the circumstances, the affidavit sets forth sufficient

evidence that would cause a reasonable person to believe that a search will uncover evidence of criminal activity.  See United States v. Mykytiuk, 402 F.3d 773, 776 (7th Cir. 2005); United States v. Hicks, 650 F.3d 1058, 1065 (7th Cir. 2011).  When the affidavit is supported by information from an informant, the probable cause determination turns on the informant's credibility.  United States v. Bell, 585 F.3d 1045, 1049 (7th Cir. 2009); United States v. Olson, 408 F.3d 366, 370 (7th Cir. 2005).  To assess whether the informant's information is sufficiently reliable to support issuance of the warrant, a court considers: (1) the degree to which the informant acquired knowledge of the events through firsthand observation; (2) the amount of detail provided; (3) the extent to which the police corroborated the informant's statements; (4) the interval between the dates of the events and the application for the search warrant; and (5) whether the informant appeared before the judge in person and filed his own affidavit.  See United States v. Sutton, 742 F.3d 770, 773 (7th Cir. 2014); Koerth, 312 F.3d 862 at 866.  No one factor is dispositive.  United States v. Brack, 188 F.3d 748, 756 (7th Cir. 1999) ("a deficiency in one factor may be

compensated for by a strong showing in another or by some other indication of reliability").

Hansmeier challenges the Affidavit on a number of grounds. First, Hansmeier argues that the information in the Affidavit was stale.  Also, in a related argument, Hansmeier argues that the Affidavit did not contain information indicating how recently the Confidential Source had been in Hansmeier's residence.

There is no "bright line" rule for determining when information is stale.  <u>Sutton</u>, 742 F.3d at 774.  The Seventh Circuit holds that the age of the information received from a Confidential Source is considered with the rest of the factors.  <u>Id.</u>  Moreover, when the affidavit refers to facts that show ongoing, continuous criminal activity, the passage of time is less critical.  <u>United States v. Spry</u>, 190 F.3d 829, 836 (7th Cir. 1999).

In the last Opinion, the Court considered all of the factors and found that "the interval between the events described by the Confidential Source and the application for the search warrant was not so long as to dispel a reasonable belief that a search of the house would uncover evidence of illegal drug activity."  Opinion, p.

23 (d/e 38).  Moreover, the Affidavit indicates that the Confidential Source stated he was in Hansmeier's residence a month earlier and saw 30 pounds of marijuana; he was at Hansmeier's house "recently" and saw a large stack of money; and he had last received methamphetamine and heroin from Hansmeier a few days earlier. See Affidavit, Defendant's Exhibit One.

Given the ongoing, continuous criminal activity, the information is not stale.  Moreover, the Confidential Source's observations when he was in the house 30 days earlier and "recently" were sufficiently tied to the ongoing criminal activity to support a reasonable belief that a search of the house would uncover evidence of illegal drug activity.

Hansmeier also argues that Agent Murphy conducted no corroboration other than driving by Hansmeier's residence.  See, e.g., Draine v. Bauman, 708 F. Supp. 2d 693, 702 (N.D. Ill. 2010) (citing cases from other circuits that hold that corroboration of innocent details, like where a suspect lives, does not necessarily establish probable cause).  Hansmeier raised this argument in the first two motions.  As the Court found at that time, Agent Murphy

also checked Hansmeier's criminal history, which showed at least one prior conviction for distribution of a controlled substance. Agent Murphy also noted that Hansmeier was currently on parole. A criminal history check has some corroborative value. See Olson, 408 F.3d at 327 (a criminal history check of the accused has some corroborative value); but see United States v. Peck, 317 F.3d 754, 757 (7th Cir. 2003) (a record check alone does not corroborate an informant's account).

Next, Hansmeier argues that the Confidential Source never appeared in front of the judge and neither did Attorney DeCoster or Agent Murphy. However, Missouri law (where the affidavit was executed) does not even permit oral testimony when applying for a search warrant. Mo. Rev. Stat. § 542.276(3). Moreover, testifying before the issuing judge is just one of the relevant factors in the totality of the circumstances analysis. United State v. Taylor, 471 F.3d 832, 840 (7th Cir. 2006).

Hansmeier challenges the Affidavit on the ground that it did not contain any information that the Confidential Source had previously provided information to law enforcement. However,

"police are not limited to relying only on informants with proven track records of providing truthful information." United States v. Mitten, 592 F.3d 767, 773-74 (7th Cir. 2010). The reliability of an informant can be shown by evidence that he provided truthful information before, but that is not the only way to show that an informant is reliable. Id. at 774. An informant's reliability and veracity can be shown by corroboration, the fact that the statement is contrary to his own penal interests, and where the information is based on personal observation. Id. Therefore, the fact that the Affidavit omitted any information about the Confidential Source's track record does not detract from the Court's earlier finding that the Affidavit set forth sufficient facts to establish probable cause.

Hansmeier also challenges Agent Murphy's inclusion of information Agent Murphy received from an additional confidential informant (CI 648) without any indication that the informant was reliable. However, in the Opinion on the first two motions to suppress, this Court did not give any weight to CI 648's information because Agent Murphy did not provide any details about the informant or the age of the information

received.  The Court, nonetheless, found that the issuing judge had a substantial basis for determining that probable cause existed even without the information from CI 648.

The Court finds no reason for changing the Court's earlier determination that, viewing the totality of the circumstances, the issuing judge had a substantial basis for determining that probable cause existed.  <u>See</u> Opinion (d/e 38) p. 25.

## C.  The Court Finds <u>Glover</u> Distinguishable

In his Amended Motion to Suppress, Hansmeier also argues that this Court should reconsider its earlier decision in light of <u>United States v. Glover</u>, 755 F. 3d 811 (7th Cir. 2014).

In <u>Glover</u>, an officer submitted a state court probable cause affidavit based on information received from a "Doe" informant. Doe reported that a felon known as "T.Y." was a member of the Traveler's Vice Lords gang and part of a stick-up crew who robbed people carrying large amounts of drugs or money.  <u>Glover</u>, 755 F.3d at 814-15.  Doe told the officer that T.Y. was in the possession of two handguns and lived at 905 Kedvale in Chicago, that Doe had

seen the guns while in the house the day before and many times

over the past six weeks, and that T.Y. needed the guns because he

had a "dope spot" (a street level point of sale) for heroin.  <u>Id.</u>

The affidavit also described the officer's corroboration of

several facts.  The officer showed Doe a photo lineup and Doe

identified the defendant as T.Y.  The officer confirmed the defendant

had two felony convictions and had lived at the address in question.

Finally, the officer took Doe to the area of the residence, and Doe

was able to identify the defendant's house.  <u>Id.</u> at 815.

The affidavit did not, however, contain any available

information on Doe's credibility.  <u>Id.</u>  In fact, Doe had been an

informant for the Chicago police for six years and had been

affiliated with a gang.  Doe had fourteen criminal convictions, four

of which were incurred while Doe was working as an informant.  <u>Id.</u>

Doe had on two occasions used aliases when questioned by police

officers.  <u>Id.</u>  Doe had also received payment for providing

information to the police in the past.  <u>Id.</u>

The officer filed the affidavit and took Doe with him to appear

before a state court judge.  <u>Id.</u>  There was no record that Doe

provided any testimony.  <u>Id.</u>  The state court judge issued the

search warrant.  A team of officers executed the warrant and

recovered guns and heroin.  Doe was paid $450 based on the result

of the search.  <u>Id.</u>

The defendant was arrested and eventually charged in federal

court. <u>Id.</u>  The defendant moved to suppress the evidence, arguing

that the affidavit was insufficient because the affidavit (1) omitted

any information about the informant's credibility; (2) showed

minimal corroboration; (3) lacked detail; (4) provided no basis for

the informant's knowledge of the alleged drug crimes and robberies;

and (5) was not supplemented with testimony when the informant

appeared before the state court judge.  <u>Id.</u> at 16.  The Seventh

Circuit focused only on the first argument and found that the

"complete omission of information regarding Doe's credibility is

insurmountable, and it undermines the deference we would

otherwise give the decision of the magistrate to issue the warrant."

<u>Id.</u>

Specifically, the Seventh Circuit noted that evidence about an

informant's credibility or potential bias was crucial.  <u>Id.</u>  However,

known, highly relevant, and damaging information about Doe's credibility was completely omitted from the affidavit. The Court found that the omission of the information, in light of the additional fact that the tip was minimally corroborated and the affidavit provided little detail, undermined Doe's credibility. Id. at 817-18. Without the credibility information, the state court judge "had no meaningful opportunity to exercise his or her discretion to draw favorable or unfavorable inferences." Id. at 818.

The Seventh Circuit was careful to note that where information about credibility is not available, other factors "may overcome the doubt inherent in relying on an informant without a track record." Id. (noting that extensive corroboration or other factors could salvage the warrant). Nonetheless, the Court found "[i]n this case, however, the issuing magistrate should not have been forced to rely on other factors because vital credibility information was omitted from the affidavit." Id.

The Seventh Circuit also agreed with the defendant's argument that he was entitled to a hearing on whether, for purposes of the good-faith analysis, the officer acted with reckless

disregard for the truth by omitting from the affidavit important information about the informant's credibility. <u>Id.</u> at 819. The Court found that the defendant had made a substantial preliminary showing that the omitted credibility information was material. <u>Id.</u> at 820. The court also found that the credibility omissions themselves provided sufficient evidence to support a reasonable inference of reckless disregard for the truth. <u>Id.</u> Therefore, the Seventh Circuit remanded the case for a hearing pursuant to <u>Franks v. Delaware</u>, 438 U.S. 154 (1978), to determine if the good-faith exception to the exclusionary rule should apply.

To the extent Hansmeier is arguing that the Affidavit is insufficient in light of <u>Glover</u>, the Court finds <u>Glover</u> distinguishable. In <u>Glover</u>, the affidavit did not give the issuing judge any information about Doe's credibility. In contrast, here the Affidavit gave Judge Roberts a great deal of information about the Confidential Source's criminal nature and his motivations. The Affidavit reflects that the Confidential Source had just been arrested for possession of about 68 grams of methamphetamine, the Confidential Source admitted to repeatedly purchasing

methamphetamine and heroin from Hansmeier, that the West Central Illinois Drug Task Force had previously made two controlled purchases of methamphetamine from the Confidential Source, and that the Confidential Source was cooperating with law enforcement. As the Court noted when ruling on the last two Motions to Suppress, this information was sufficient for Judge Roberts to weigh the Confidential Source's credibility.

**D. Hansmeier Has Not Shown that Agent Murphy Deliberately or Recklessly Included False Material Information or Omitted Material Information**

Hansmeier also argues that Agent Murphy deliberately or recklessly included false information or omitted material information in the Affidavit.  Hansmeier requested a <u>Franks</u> hearing.

Under <u>Franks v. Delaware</u>, 438 U.S. 154, a search warrant is not valid if the officer obtains it by deliberately or recklessly presenting false, material information to the judge issuing the warrant.  The rationale of <u>Franks</u> also applies to material omissions.  <u>See</u> <u>United States v. Williams</u>, 737 F.2d 594, 604 (7th Cir. 1984); <u>United States v. McMurtrey</u>, 704 F.3d 502, 508 (7th Cir.

2013).  An evidentiary hearing on the veracity of the affidavit is required when the defendant requests a hearing and makes a substantial preliminary showing that a false statement or misleading omission was made deliberately or with reckless disregard for the truth and that probable cause would not have existed without the false statements or misleading omissions. McMurtrey, 704 F.3d at 508-09 (noting that "[i]t is relatively difficult for a defendant to make the 'substantial preliminary showing' required under Franks"); United States v. Prideaux-Wentz, 543 F.3d 954, 962 (7th Cir. 2008).  As noted, this Court held a Franks hearing on November 7 and November 12, 2014.

At a Franks hearing, the defendant must demonstrate, by a preponderance of the evidence, that (1) the affidavit contained material false statements or material omissions; (2) the false statements were made or the information omitted intentionally or with reckless disregard for the truth; and (3) the false statements were necessary to the finding of probable cause.  United States v. Williams, 718 F.3d 644, 650 (7th Cir. 2013).  When the claim is that the officer deliberately or reckless omitted information, the

defendant must show that the material was omitted deliberately or recklessly to mislead the judge.  <u>Williams</u>, 718 F.3d at 650.

An affiant acts with reckless disregard if he "in fact entertained serious doubts as to the truth of his allegations." <u>United States v. A Residence Located at 218 Third Street, New Glarus, Wisconsin</u>, 805 F.2d 256, 258 (7th Cir. 1986).  The inquiry is subjective and focuses on the officer's state of mind.  <u>Williams</u>, 718 F.3d at 650 n.2 (also noting that the issue is whether the affiant lied or acted with reckless disregard for the truth, not whether other officers who provided information did so).  Reckless disregard may be "proved from circumstances showing obvious reasons for the affiant to doubt the truth of the allegations." <u>Id.</u>  If the defendant meets his burden, the Court examines the affidavit, eliminating any false statements and adding any omitted material facts, and determines whether probable cause exists.  <u>United States v. Harris</u>, 464 F.3d 733, 738 (7th Cir. 2006); <u>see</u> <u>also</u>, <u>e.g.</u>, <u>Williams</u>, 718 F.3d 644 (finding it was not clearly erroneous for the district court to determine, after a <u>Franks</u> hearing, that the false statement was negligently as opposed to recklessly included where the

affidavit was prepared in haste, there was no evidence that the officer knew there was a mistake in the affidavit when he still had time to correct it, and the police excluded from the affidavit evidence potentially favorable to the police).

### a. Omission of Agent Murphy's Disciplinary Information Was Not Material

Hansmeier argues that Agent Murphy deliberately and recklessly omitted information about prior discipline: (1) that Agent Murphy was fired in 2003 from his position as a police officer in Springfield, Missouri, because he stole beer from an evidence room that had been seized by his department and was supposed to be destroyed; and (2) that Agent Murphy had been suspended twice, once for paying two informants for making drug purchases after being told not to and again for failing to make a request to a crime lab to perform an analysis on evidence in a Monroe County, Missouri, investigation. (At the hearing, Agent Murphy testified that he was fired for taking home beer that was supposed to be destroyed, was suspended once for forgetting to send two pills to

the state crime lab, and suspended once for being alone with a female confidential informant).

The Government argues that Agent Murphy's work infractions have no bearing on the warrant's validity, on Agent Murphy's truthfulness or ability to execute a search warrant, or on whether there was probable cause to search Hansmeier's home. According to the Government, Agent Murphy's credibility is relevant only insofar as he accurately recounts what the source told him.

The Court finds that the information is not material. Even had the information been included in the Affidavit, the Affidavit still set forth sufficient facts that would cause a reasonable person to believe that a search would uncover evidence of criminal activity. Mykytiuk, 402 F.3d at 776 (setting forth the standard). Further, Agent Murphy adequately explained the infractions as unintentional mistakes on his part.

**b. Hansmeier Failed to Show that Agent Murphy Deliberately or Recklessly Omitted Information About the Confidential Source's Extensive Criminal History and, in any Event, the Information Was Not Material in Light of the Information Contained in the Affidavit**

Hansmeier complains that the Affidavit omitted any mention of the Confidential Source's extensive criminal record, which included drug convictions and convictions for burglary and theft. Agent Murphy testified that he knew the Confidential Source was a convicted felon and was on parole in Missouri. Agent Murphy knew the Confidential Source was on parole because Agent Murphy receives a monthly list of individuals who are supervised in the district. Agent Murphy did not run a full criminal history check on the Confidential Source.

Agent Murphy did not include in the Affidavit that the Confidential Source had been convicted of an offense or that he was on parole. Agent Murphy testified that he did not know the Confidential Source's entire history but did include in the Affidavit that the Confidential Source had recently been arrested with a large amount of methamphetamine and that two previous buys had been conducted with the Confidential Source. Agent Murphy also testified that the person the Confidential Source was with when the Confidential Source was arrested was released. Agent Murphy expressed concern that this person might tell others about the

Confidential Source's arrest and that this information would get back to Hansmeier. Agent Murphy did not want Hansmeier to have time to deliver or get rid of the drugs allegedly in his home. Agent Murphy wanted to get into Hansmeier's home as soon as possible so he could prevent the possible destruction or hiding of evidence. When asked whether he was working under a time crunch, Agent Murphy testified that he put in the Affidavit what he thought he needed to put in that was relevant to probable cause. He denied trying to hide information from the judge.

The Court finds Agent Murphy credible and does not believe that he deliberately or recklessly omitted that the Confidential Source was a convicted felon and on parole. Moreover, as the Court found in the Opinion on the first two Motions to Suppress, the information about the Confidential Source's criminal record was not material even if Agent Murphy intentionally failed to include the information in the Affidavit. As noted, the Affidavit indicated that the Confidential Source had been arrested with approximately 68 grams of methamphetamine and that the Task Force had made two controlled buys from the Confidential Source. The Affidavit also

contained the Confidential Source's admission that he had been

buying methamphetamine from Hansmeier for several months and

had more recently been buying heroin.  This information was

sufficient for Judge Roberts to weigh the Confidential Source's

credibility.  United States v. Hanhardt, 157 F. Supp. 2d 978, 994-

95 (N.D. Ill. 2001) (finding that the officer included enough of the

criminal histories of the informants to permit the court to weigh

their reliability); United States v. LaMorie, 100 F.3d 547, 555 (8th

Cir. 1996) (finding the omission that the informant was a convicted

felon was not material where the officer disclosed that the informant

confessed to participating in several crimes and noting that "[t]he

judge could hardly have been under the impression that [the

informant] was a model citizen"); Taylor, 471 F.3d at 840 ("an

informant's criminality does not in itself establish unreliability").

Therefore, even if the Affidavit included that the Confidential

Source was a convicted felon and on parole, the information would

not have detracted from a finding of probable cause. See also United

States v. Allen, 297 F.3d 790, 796 (8th Cir. 2002) (finding the

record did not clearly show that the omissions were intentionally or

recklessly made where the affiant testified that while he knew that the confidential informant had a criminal history, he did not know its exact nature; the court also found that the criminal history did not add much to the affidavit because the other information contained in the affidavit provided sufficient information for the magistrate judge to weigh the informant's credibility).

### c. The Omission of Information that the Confidential Source Was an Addict and Had Injected Himself with Methamphetamine on May 14, 2013 Was Not Material

Hansmeier also challenges the Affidavit on the basis that Agent Murphy omitted information that the Confidential Source was an addict and had, by his own admission, injected himself with methamphetamine on the day he provided the information. However, Hansmeier has not shown that the information was deliberately or recklessly omitted.  See United States v. Garey, 329 F.3d 573, 577-78 (7th Cir. 2003) (finding the defendant failed to show that the officer deliberately or reckless omitted information about the informant's drug use).

Agent Murphy testified that he knew the Confidential Source was a methamphetamine user.  He did not include in the Affidavit

that the Confidential Source was an addict or a user but did indicate that the Confidential Source was in custody for possession of 68 grams of methamphetamine and that two previous buys had been made from him.  Agent Murphy also testified that he assessed the Confidential Source's competence to determine whether the Confidential Source was under the influence.  He did not observe any indication that the Confidential Source was under the influence and, therefore, did not include such information in his Affidavit.

As noted above, the Court finds Agent Murphy credible and concludes that Agent Murphy did not deliberately or recklessly omit information that the Confidential Source was a user, addict, or had recently injected methamphetamine.  Also, because Agent Murphy did not observe any indication that the Confidential Source was under the influence, he did not omit material information.  See United States v. Scott, 610 F.3d 1009, 1015 n.2 (8th Cir. 2010) (finding that the defendant made no showing that the drug use of the informants "affected their ability to provide accurate information or otherwise impacted the probable cause finding"); United States v. Wilson, 324 F. App'x 546 (8th Cir. 2009) (Franks hearing not

required where the confidential informant's cocaine use or knee injection affected the informant's ability to relay accurate information to police); <u>Allen</u>, 297 F.3d at 795-96 (finding no plain error where the affidavit did not disclose that the informant was under the influence of methamphetamine because the affiant testified that the informant was lucid and coherent and that persons under the influence of methamphetamine are generally functional).

Moreover, the Confidential Source's drug addiction is not material given the other information contained in the Affidavit, including the Confidential Source's first-hand knowledge of the events, the length of time the Confidential Source was purchasing drugs from Hansmeier, and the specific details provided.  <u>See</u>, <u>e.g.</u>, <u>United States v. Martin</u>, 866 F.2d 972, 979 (8th Cir. 1989) ("In light of the extensive information set forth in the affidavit, we believe it beyond peradventure that the omission of facts concerning the [informant's] drug addiction was of no consequence to the determination of probable cause").

**d. Agent Murphy Did Not Deliberately or Recklessly Include False Information About the 2004 Incident When Hansmeier Allegedly Flushed Drugs Down the Toilet and the Evidence in this Case Would Have Been Discovered Even if the Officers Had Knocked**

Hansmeier also challenges Agent Murphy's inclusion of information that Hansmeier had allegedly flushed drugs down a toilet when law enforcement served a previous search warrant on Hansmeier's residence.   This information purportedly came from Captain Patti Talbert. The Affidavit provided:

> During a previous search warrant at a residence where Hansmeier was an occupant, Hansmeier flushed drugs and drug paraphernalia after Law Enforcement Officers knocked and announced that they had a search warrant. Hansmeier has also resisted arrest by law enforcement in the past.  According to Capt. Patti Talbert, since 1998 there have been three search warrants served on residences where Chad Hansmeier has resided.  Due to the installation of cameras, Hansmeier's history of resisting arrest and attempting to destroy evidence, a no[-]knock search warrant is requested.

See Affidavit, Defendant's Exhibit One.

In support of his Amended Supplemental Motion to Suppress Evidence, Hansmeier submitted deposition testimony from a June 27, 2005 deposition in which Talbert testified about the raid on Hansmeier's residence in Monroe County in 2004.  During that

deposition, she acknowledged that she and a group of officers intercepted Hansmeier and Kristin Bush on a highway some distance from their home and took them into custody. The deposition of another member of the Northeast Missouri Drug Trask Force, Tim Forney, confirms that Hansmeier and Bush remained in custody outside their residence while the police searched the residence.

The Government responds that the Affidavit was "inartfully worded" but that the incident did occur and supported the request for a no-knock warrant. The Government also argues that the affidavit's description of the incident was immaterial to the probable cause analysis.

At the hearing, Agent Murphy testified that he included in the Affidavit the information he received from Captain Talbert. He later learned that drugs had been flushed, but that Hansmeier had not been in the house when the officers arrived. Agent Murphy believes that he either received misinformation or the information was given to him in the wrong manner by Captain Talbert.

Captain Talbert testified that it had been nine years since that earlier incident had occurred when she spoke to Agent Murphy. What actually happened in 2004 is that Hansmeier was stopped on the roadway by officers while other officers executed the search warrant. In the bathroom, the officers found marijuana residue on the rim and in the bowl of the toilet and a bag with marijuana residue in the trash can. Officers went down to the lagoon and cleaned out the end of the sewer pipe where drug paraphernalia and bags were found. Hansmeier's house was the only one that filtered into the lagoon. Captain Talbert believed Hansmeier had been tipped off about the search, flushed drugs down the toilet, and left the house.

The Court finds that Agent Murphy included the information he received from Captain Talbert, which was incorrect. However, Agent Murphy did not know, or have reason to know, that the information was incorrect. Therefore, the Court finds that Agent Murphy did not deliberately or recklessly include false information. See Williams, 718 F.3d at 650 n.2 (also noting that the issue is

whether the affiant lied or acted with reckless disregard for the truth, not whether other officers who provided information did so).

Moreover, even if the no-knock entry would not have been justified absent the information about the prior incident, the officers relied on the warrant in good faith and the evidence would still have been discovered.  In <u>United States v. Carter</u>, 999 F.2d 182, 186-87 (7th Cir. 1993), the Seventh Circuit held that a warrant issued without adequate cause to justify a no-knock entry does not mean that the evidence must be suppressed.  <u>Id.</u> citing <u>United States v. Moore</u>, 956 F.2d 843, 851 (8th Cir. 1992).  Instead, the evidence is admissible unless the affidavit was so lacking in probable cause that the officer would not have reasonably believed that the affidavit was sufficient.  <u>Id.</u>  Other courts have applied the "inevitable discovery" doctrine to find that suppression is not warranted if the police would have discovered the evidence if they had knocked before entering.  <u>See</u> <u>United States v. Langford</u>, 314 F.3d 892 (7th Cir. 2002); <u>see</u> <u>also</u> <u>United States v. Brown</u>, No. 00-CR-112-C, 2001 WL 34373161 (W.D. Wis. March 16, 2001) (finding that although the no-knock warrant should not have been issued,

suppression was not warranted where the agents would inevitably have seized the evidence even if they had announced their presence—the warrant was otherwise valid and officers acted in good faith), aff'd 333 F.3d 850 (7th Cir. 2003); United States v. Jones, 214 F.3d 836, 838 (7th Cir. 2000) (the defendant could not argue that he would have destroyed the evidence but for the officer's unreasonable manner of entry).

### e. Omitting Information that the Confidential Source was Looking for Leniency in Exchange for His Cooperation is Immaterial

Hansmeier argues that Agent Murphy deliberately or recklessly omitted from the Affidavit the fact that the Confidential Source was looking for a reduction of any time he might have to serve in exchange for his cooperation. Hansmeier supported this argument by attaching Agent Murphy's testimony from the July 25, 2013 hearing where Agent Murphy admits that the Confidential Source was looking for a reduction in exchange for his cooperation.

This Court previously found that Agent Murphy's failure to disclose that the Confidential Source was looking to help himself with his own charges, even if deliberately and recklessly omitted

with the intent to mislead the judge, was not material  The Affidavit indicated that the Confidential Source was recently arrested and cooperating with law enforcement.  That would have put the judge on notice that the Confidential Source was likely looking to help his own case.  Molina v. Cooper, 325 F.3d 963, 970 (7th Cir. 2003) ("[C]ourts are aware that informants are frequently facing charges and hoping for deals").  The Court finds no reason to change its previous ruling.

### f.  Including Information that the Confidential Source Had Been Buying Methamphetamine from Hansmeier for Six Months When Both the Confidential Source and Hansmeier Had Been Out of Prison Less than Six Months Was Not Material

Hansmeier also argues that Agent Murphy falsely stated that the Confidential Source had been buying methamphetamine from Hansmeier for six months when both the Confidential Source and Hansmeier had been out of prison less than six months.

As the Court noted in the last Opinion, it is not enough to show that the informant lied and the officer included the lie in the affidavit.  United States v. Johnson, 580 F.3d 666, 670 (7th Cir. 2009).  The officer must have perjured himself or acted recklessly,

meaning he "seriously doubted or had obvious reason to doubt the truth of the allegations." Id.  The Court found that Hansmeier had not made any such showing.  The Court also found the statement was not material.  Whether the Confidential Source had been buying drugs from Hansmeier for three or six months, the information showed a continuous course of dealing and provided a basis for the Confidential Source's statement that he observed a stack of money in Hansmeier's home "recently" and 30 pounds of marijuana a month earlier.  Hansmeier has not presented any evidence to cause the Court to reconsider its earlier decision.

### g. Fact That a Camera Was Not Found Outside the Residence is Not Material

Finally, Hansmeier argues although the Confidential Source told Agent Murphy that Hansmeier had two cameras, one inside and one outside the front door of the residence, Agent Murphy only observed (at the time the search warrant was executed) one non-functioning camera inside the front door.  Motion (d/e 54, p. 9).

Hansmeier's argument is not entirely clear. Hansmeier presented no evidence that Agent Murphy knew or should have known, when he completed the Affidavit, that the information about two cameras was false. Moreover, Agent Murphy testified that when the officers executed the search warrant, he saw wiring going outside but that there was no camera, which tends to support what the Confidential Source told Agent Murphy. Further, to the extent the information about the cameras supported the issuance of a No-Knock warrant, the Court finds that suppression is not warranted because the evidence would still have been discovered had the officers knocked. Therefore, Hansmeier's argument about the cameras does not support suppression of the evidence.

### III. CONCLUSION

For the reasons stated, Defendant Hansmeier's Amended Supplemental Motion to Suppress (d/e 54) is DENIED. This case is currently set for a Final Pretrial Conference on November 21, 2014 at 10:00 a.m. The parties shall submit the following documents and motions by noon on November 19, 2014: (1) witness lists,

exhibit lists, and stipulations; (2) one copy of proposed jury instructions that the parties have agreed upon; (3) separate copies from each party of any disputed jury instructions; (4) an agreed statement of the case; (5) any non-routine voir dire questions; and (6) any motions in limine.  The witness lists shall be filed under seal. The parties shall bring their marked exhibits to the Final Pretrial Conference.  Objections to witnesses, exhibits, and jury instructions, as well as responses to pretrial motions, shall be made in writing, with citation to legal authority, by noon on November 20, 2014.

ENTER:  November 14, 2014

FOR THE COURT:

                              <u>  s/Sue E Myerscough</u>
                              SUE E. MYERSCOUGH
                              UNITED STATES DISTRICT JUDGE